FIDELITY PHENIX FIRE INS. CO. OF NEW YORK et al. v. ABILENE DRY GOODS CO.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 11, 1913. Rehearing Denied Feb. 15, 1913.)

1. INSURANCE (§ 576*)—ADJUSTMENT OF LOSS —WAIVER AS TO ADJUSTMENT.

A provision in a tornado insurance policy that the insured should exhibit the property which remained after loss to any person designated by the company as often as required, when reasonably construed, means only that the adjusters of the company should have a reasonable opportunity to examine the property, and when they refused to do so for 10 days after request from the defendant, disclaiming any liability under the policy, the requirement was waived.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1436–1438; Dec. Dig. § 576.*]

2. INSURANCE (§ 658*)—ACTIONS ON TORNADO POLICY—EVIDENCE—ADMISSIBILITY.

Where insurance companies defended an action upon a tornado insurance policy on the ground that the damage was caused by hail and not by wind and offered to show that six months prior to the loss a wind of equal velocity had not injured the goods, the evidence was inadmissible, where it did not affirmatively appear that the conditions at the time of the prior storm were the same as those at the latter, or that they were the same at the Weather Bureau where the velocity was measured as at the store where the damage occurred.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1689, 1690, 1694; Dec. Dig. § 658.*]

Appeal from District Court, Taylor County; John B. Thomas, Judge.

Action by the Abilene Dry Goods Company against the Fidelity Phenix Fire Insurance Company of New York and others. Judgment for the plaintiff, and defendants appeal. Affirmed.

Crane & Crane, of Dallas, and Harry Tom King, of Abilene, for appellants. Kirby & Davidson, of Abilene, for appellee.

CONNER, C. J. The appellee company on February 3, 1912, instituted three separate suits against the appellants, the Fidelity Phenix Fire Insurance Company of New York, the National Fire Insurance Company of Hartford, Conn., and the Northwestern National Insurance Company of Milwaukee, all corporations; but by agreement the three causes were consolidated and tried as one under the docket number 2,884. Each suit was upon a policy of tornado insurance, and the pleadings in the three causes are identical except as to name and as to the amounts of damages claimed. The plaintiff alleged that on the 5th day of June, 1911, the insurance companies named issued the several policies to the plaintiff in the respective amounts of $4,000, $6,500, and $7,500, and that by the terms of the policies the defendants insured the plaintiff for a period of one year from their date against loss or damage by tornado, windstorms, or cyclone in an amount not to exceed the several sums stated in the policies. It was further alleged that on the 31st day of July, 1911, while the policies were in force, a stock of merchandise covered thereby and owned by the plaintiff company, was damaged to the extent of $4,953.82, because of which, under the terms of the policies, the plaintiff was entitled to recover the respective sums of $1,100.77; $1,788.88; and $2,063.17.

Besides a general denial, each defendant specially pleaded, among other things, first, that the policies covered only such damages as should be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the

wind, and that the loss or damage in question, if any, was caused by hail, and not by water or rain entering the building through openings in the roof or walls made by the direct action of the wind alone as the policies provided; and, second, that the plaintiff had not complied with a special provision of the policies to the effect that in event of a loss on the part of the insured it should forthwith protect the property from further damage, separate the damaged from the undamaged personal property, and make complete inventory of the same stating the quantity and cost of each article and the amount claimed thereon, and as often as required should exhibit to any person designated by the company all that remained of the property described in the policies.

The plaintiff, by supplemental petition, answered that it did protect the property insured from further damage, and had separated the damaged and the undamaged personal property, making complete inventory of the same stating the quantity and cost of each article and amount of damage claimed thereon, and had offered to exhibit and did exhibit said property, both damaged and undamaged, to defendants' adjusters, and that defendants' adjusters had been given ample opportunity to inspect and examine the same at all times from August 1 to August 11, 1911, but that said adjusters obstinately and repeatedly refused to go through and inspect said damaged goods for the whole of said 10 days, by reason of all which it was charged that the defendants had waived the provisions that the insured should as often as required exhibit to any person designated by the defendants all that remained of said property, etc.

The consolidated cause was submitted to a jury which returned a verdict in favor of the plaintiff against the defendants as follows: Northwestern National Insurance Company, $1,250; National Insurance Company of Hartford, $1,083.33⅓; Fidelity Phenix Insurance Co. of New York, $666.66⅔, and judgment was entered accordingly.

The evidence is sufficient to support the evident conclusion of the jury, to the effect that on the evening of July 31, 1911, a windstorm arose and swept over the city of Abilene of such force as to blow out one or more of the windows in the second story of the brick building, within which the appellee company's stock of merchandise was situated, and that immediately following such openings in the building made by the wind, rain and hail entered the building in such quantities as to flow down through floor and ceiling upon appellee's stock of merchandise and caused damages to the extent specified in the jury's verdict. Thus far, appellants by their brief raise no question.

[1] It is insisted first, however, that the undisputed evidence shows that the plaintiff failed to exhibit to persons designated by appellants, as provided in the policies and as often as required, the damaged property. All of the evidence has been carefully examined; but we think it sufficient to state the substance of that tending to support the verdict and judgment. It is to the effect that very soon after the storm the appellee company proceeded to separate piece by piece the damaged from the undamaged merchandise, and on more than one occasion sought out the adjusters of the insurance companies, who came to the city of Abilene for the purpose of adjusting losses caused by the storm, and endeavored to get them to come and examine the damaged goods and determine the amount of loss, but that such adjusters refused to do so, one of them declaring that the companies were not liable and that they were going to refuse to accept liability under the policies; that, after such efforts to secure an adjustment had continued from about the 1st of August to the 11th, the plaintiff company placed the damaged goods back among those not damaged and began a sale of their stock, after which the adjusters demanded that the company reseparate the damaged from the undamaged goods, taking an inventory of the same, and exhibit such goods to the agents of the insurance companies, as provided in the policies; the insurance companies offering in this connection to pay the actual costs of the reinventory, but not acknowledging liability under the policies. Under such circumstances plaintiff company refused to take another inventory, and continued the sale of the damaged goods.

The special provisions of the policies relied upon must receive a reasonable construction, and we are of opinion that thereunder the insurance companies were not given the right to arbitrarily demand an inventory and examination of the damaged goods after they had been given repeated opportunities to do so and had refused. The provision of the policies reasonably construed can mean no more than that the insured should separate the damaged from the undamaged goods and give the adjusters of the insurance companies a reasonable opportunity to examine the stock, and such opportunity was undoubtedly given, at least the evidence undoubtedly tends to show that it was so given. It must, therefore, be held that the appellee company did all that it was required to do in the respect now questioned. See Phœnix Assur. Co. of London v. Stenson, 34 Tex. Civ. App. 471, 79 S. W. 866. In the case cited, where the same defense arose, it was held that three days after a loss in the absence of unusual conditions was ample time for the insurer to avail itself of the provisions, and that a failure to do so constituted a waiver, and that the insured did not break the contract of insurance by disposing of the goods at the end of the time. We approve this authority as applying to the present case, and overrule appellants' first and third assignments of error.

[2] On the trial appellants offered to prove

by W. A. Green, the United States Weather Bureau observer at Abilene, that he was in charge of said bureau on the 31st day of July, 1911, and on February 25, 1912; that the bureau at the times stated was equipped with appliances to determine the velocity of wind; that on the 25th day of February, 1912, a windstorm from the west occurred at Abilene, which attained a maximum velocity of 61 miles per hour; that no hail accompanied the wind; that the maximum velocity of 61 miles was maintained for a period of five minutes. This testimony was excluded by the court on the plaintiff's objections that it was irrelevant and immaterial, and that it had not been shown that the conditions were exactly the same at the building occupied by the plaintiff and that in which the Weather Bureau was situated. In this connection it should be further stated that it was shown that the windstorm of July 31, 1911, attained a maximum velocity of 60 miles per hour from the southwest; that in the second story of the building occupied by plaintiff there were windows on the west corresponding to those on the east which were not blown in by the wind of February 25, 1912. It also appeared that the Weather Bureau was located on North First street, five blocks west of Pine street, and that the appellee's store building was located on Pine street between North Second street and North Third street, and about midway of the block; that the distance from appellee's store directly south along Pine street to the north line of North First street is about 530 feet, and that the Weather Bureau and appellee's store were located at the same place as on July 31, 1911.

The evidence offered is, of course, important only as affording an inference that it was not the wind alone, as it was necessary to show in order to bring the plaintiff's loss within the terms of the policies sued upon, that broke the walls of the plaintiff's building and thus permitted the entrance of rain on the occasion in question, and inasmuch as appellants have not, as already indicated, presented any assignment of error questioning the verdict in plaintiff's favor on this issue, it might be said that the ruling of the court now under consideration is immaterial, or at least that in view of the clearness and weight of the testimony to the effect that the windows in the eastern end of the plaintiff's building were blown in before the appearance of either rain or hail, that the offered evidence would not probably have produced a different result, and that its exclusion is therefore harmless. But wholly regardless of these suggestions, we cannot say that the court's ruling is erroneous

It is logical to assume that a common cause, whether happening before or after the occurrence under consideration, would pro-

duce like effects under similar conditions, and hence the conditions being the same, it would be entirely permissible to show that a wind of at least equal velocity on February 25, 1912, failed to force the windows on the west end of the plaintiff's building, thus affording an inference that the destruction of the windows on the east end on July 31, 1911, was not done by the force of the wind alone. But to render such evidence admissible at all, it must, as already indicated, be first shown that the conditions upon the two occasions were at least substantially similar. See 1 Wigmore on Evidence, § 442. In the instance before us we cannot say that this requirement has been met. True, appellants proved that the windows in both ends of the building were similar, and that the maximum velocity of the wind relied upon by the plaintiff was not greater than that appearing in the evidence offered. But the precise direction of the wind of February 25, 1912, or the area covered by it was not shown. Nor does it appear that the humidity or density of the wind on the two occasions was the same, or that in other particulars the conditions immediately surrounding and affecting the west end of the plaintiff's building on February 25, 1912, were substantially the same as at the United States Weather Bureau, 530 feet south and five blocks west, or substantially the same as those affecting the east end of the plaintiff's building on July 31, 1911. Such being our conclusion, it follows that the assignments raising the question must be overruled.

No other question requiring notice has been presented, and no reversible error having been found, we conclude that the judgment must be affirmed, and it is so ordered.